UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 6:13-CR-00294-01 |
| VERSUS | JUDGE FOOTE |
| THOMAS DESSOYE (01) | MAGISTRATE JUDGE WHITEHURST |

## MEMORANDUM RULING

Before the Court is a 28 U.S.C. § 2255 motion to vacate sentence filed by Defendant Thomas Dessoye ("Dessoye"). [Record Document 98]. For the reasons given below, Dessoye's § 2255 motion is **DENIED**.

## BACKGROUND

Dessoye was initially indicted on four counts: one count of possession of child pornography, two counts of receipt of child pornography, and one count of use of a facility of interstate commerce to attempt to entice a minor to engage in criminal sexual activity. [Record Document 10]. A superseding indictment added a count of distribution of child pornography. [Record Document 49 at 2–3]. The Government subsequently dismissed the enticement charge. [Record Documents 70 and 71]. Dessoye then pleaded guilty to the distribution count; the undersigned accepted this plea on the Magistrate's recommendation. [Record Documents 74 and 80]. In return for Dessoye's guilty plea, the Government agreed to dismiss the remaining counts at sentencing. [Record Document 77 at 1].

In connection with his guilty plea, Dessoye and the Government stipulated that he had communicated with a sixteen-year-old boy (subsequently identified as D.S.) who lived in

1

Minnesota. [Record Document 77-2 at 3]. In late October 2012, Dessoye sent D.S. a link to a Dropbox account to which Dessoye had uploaded child pornography. [*Id.* at 4]. After he sent the Dropbox link, he followed up to ensure that D.S. viewed the Dropbox contents. [Record Document 90 at 5]. D.S. eventually opened the Dropbox and viewed the child pornography. [Record Document 77-2 at 4].

On April 21, 2013, D.S.'s parents reported to Minnesota law enforcement that he had run away. [Record Document 90 at 4]. A ping of D.S.'s cell phone placed it in Dessoye's residence in Lafayette, Louisiana. [*Id.*]. It was later determined that Dessoye and D.S. had been in regular communication for some months, that Dessoye had sent D.S. money, and that Dessoye had traveled to Minnesota from Louisiana in order to help D.S. run away. [*Id.* at 4–5]. During their communications, Dessoye discussed the possibility of himself and D.S. having sexual activity with other juveniles and encouraged D.S. to begin a sexual relationship with a thirteen-year-old boy. [*Id.* at 5].

After learning from Minnesota police that D.S. was likely in Dessoye's home, the Lafayette Parish Sheriff's Office entered the home, where they encountered D.S. as well as evidence of marijuana use. [*Id.* at 4]. D.S. was arrested for possession of marijuana and held until his parents could pick him up. [*Id.*]. Meanwhile, Minnesota police asked D.S.'s father if he would consent to a search of the family's computers for evidence related to D.S.'s running away. [*Id.* at 4–5]. His father consented, but noted that several family computers were currently being repaired. [*Id.* at 5]. Separately, the repair center had contacted law enforcement after discovering child pornography on the computers. [*Id.*]. When confronted by police, D.S.'s

parents denied prior knowledge of the child pornography. [*Id.*]. Subsequent investigation of the parents' computers discovered 119 images of child pornography. [*Id.*].

Based on the discovery of D.S. in Dessoye's home, a search warrant was issued for the residence. [Record Document 105 at 5–6]. In the search, law enforcement seized Dessoye's computer, multiple thumb drives, and two non-working cell phones. [Record Document 90 at 5]. A review of the thumb drives yielded over 900 images and 382 videos of prepubescent child pornography. [*Id.*].

The Presentence Report ("PSR") calculated an advisory guideline range of 235 to 293 months incarceration. [*Id.* at 12]. Because Dessoye pleaded guilty to distribution of child pornography, his statutory maximum term of incarceration was 20 years. 18 U.S.C. § 2252A(b)(1). As a result, the adjusted advisory range was 235 to 240 months incarceration. [Record Document 90 at 12]. On July 10, 2015, this Court sentenced Dessoye to 240 months incarceration and $5,095.00 in restitution. [Record Documents 84 and 85].

On appeal, Dessoye argued that it should not be presumed that the advisory guidelines range established by U.S.S.G. § 2G2.2 is reasonable because the guidelines for child pornography are not based on empirical data and lead to sentencing disparities. *See United States v. Dessoye*, 648 F. App'x 433, 434 (5th Cir. 2016). He also argued that his sentence was "substantively unreasonable in light of his age, lack of recent or significant criminal history, and the circumstances of the offense." *Id.* The Fifth Circuit rejected these arguments and affirmed his sentence. *Id.* The instant motion followed. [Record Document 98].

## 28 U.S.C. § 2255

A federal prisoner may challenge the legality of his detention by "mov[ing] the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a); see *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004) (quoting *Kuhn v. United States*, 432 F.2d 82, 83 (5th Cir. 1970)). Where there has been a "denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). Relief under § 2255 is "reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *Kinder v. Purdy*, 222 F.3d 209, 213 (5th Cir. 2000) (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)).

A district court may deny a § 2255 motion without conducting any type of evidentiary hearing if the defendant fails to "present[] 'independent indicia of the likely merits of [his] allegations.'" *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (quoting *United States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008)). A hearing is also unnecessary if the issues were raised on direct appeal or do not describe constitutional violations. *United States v. McCollom*, 664 F.2d 56, 59 (5th Cir. 1981) (citing *Buckelew v. United States*, 575 F.2d 515 (5th Cir. 1978)).

"A section 2255 movant who fails to raise a constitutional or jurisdictional issue on direct appeal waives the issue for a collateral attack on his conviction, unless there is cause for the default and prejudice as a result." *United States v. Kallestad*, 236 F.3d 225, 227 (5th Cir. 2000) (citing *United States v. Patten*, 40 F.3d 774, 776–77 (5th Cir. 1994) (per curiam); *United States v.*

4

*Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992); *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A 1981)). Ineffective assistance of appellate counsel can constitute cause, but the *Strikland* test must still be met—that is, appellate counsel must have been objectively unreasonable in failing to raise this issue, and Dessoye must have been prejudiced by that failure. *See Higgins v. Cain*, 720 F.3d 255, 260–61 (5th Cir. 2013) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Failure to raise a legally meritless claim is neither objectively unreasonable nor prejudicial. *Smith v. Pickett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990).

## ANALYSIS

### Timeliness

With certain exceptions not relevant here, a § 2255 motion must be made within one year of the date on which the movant's conviction became final. 28 U.S.C. § 2255(f). Following an unsuccessful appeal after which the defendant does not seek a writ of certiorari, a conviction becomes final when the time expires for seeking the writ. *Clay v. United States*, 537 U.S. 522, 525 (2003). A petition for a writ of certiorari must be filed within ninety days of the entry of judgment. *Id.* (citing Supreme Court Rule 13(1)). The Fifth Circuit denied Dessoye's appeal on May 16, 2016. *Dessoye*, 648 F. App'x at 433. Because he placed his § 2255 motion in the prison legal mail on May 1, 2017, [Record Document 98 at 5], his motion is timely.

### Jurisdiction

Dessoye's first claim is that this Court lacked "jurisdiction" over him. [*Id.* at 2]. Because Dessoye failed to bring this claim on direct appeal, it is procedurally barred absent cause and resulting prejudice. *United States v. Lopez*, 248 F.3d 427, 433 (5th Cir. 2001) (citing *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998)). Thus, it must have been objectively

5

unreasonable for appellate counsel to attack only the reasonableness of Dessoye's sentence, and Dessoye must have suffered prejudice from that decision.

It is not entirely clear what Dessoye means by his use of the term jurisdiction. He initially describes jurisdiction by reference to "geographical location." [Record Document 98 at 2]. Dessoye's crime was sending child pornography to a child located in Minnesota. *Dessoye*, 648 F. App'x at 433. To the extent that Dessoye is arguing that the Western District of Louisiana was the incorrect venue, this argument is meritless. In the factual basis of his guilty plea, Dessoye stipulated that venue was proper in the Western District. [Record Document 77-2 at 4]. Even if he had not done so, "the government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18. Given that Dessoye was located in the Western District when he sent D.S. the Dropbox link, [Record Document 77-2 at 3], venue was proper.

In his reply memorandum, Dessoye attempts to clarify his focus on "geographical location" by arguing, without authority, that his prosecution was illegal because his conduct did not occur on federal land. [Record Document 105 at 2]. However, federal district courts have original jurisdiction "of all offenses against the laws of the United States." 18 U.S.C. § 3231. Dessoye was convicted of violating a federal statute. [Record Document 85 at 1]. Therefore, this Court had jurisdiction to convict and sentence him.

Dessoye may also be arguing that the statute under which he was convicted could not lawfully be applied to conduct outside of federal enclaves. [Record Document 105 at 2]. However, the Commerce Clause gives Congress authority to criminalize the possession of child pornography. *Kallestad*, 236 F.3d at 231. If Congress can criminalize possession by

persons located outside of federal enclaves, then it can certainly criminalize distribution by such persons. *United States v. Morris*, 443 F. App'x 889, 890 (5th Cir. 2011) (citing *United States v. Runyan*, 290 F.3d 223, 239 (5th Cir. 2002)); *cf. Runyan*, 290 F.3d at 239 (holding that transmission of child pornography via the internet satisfies the interstate commerce nexus for purposes of 18 U.S.C. § 2251, which criminalizes the production of child pornography). Because Congress could lawfully enact a statute criminalizing the distribution of child pornography via the internet and because district courts have jurisdiction over violations of criminal statutes, Dessoye's argument that this Court lacked jurisdiction is meritless. As his argument is meritless, he suffered no prejudice when his appellate counsel failed to make it. And so, he cannot overcome his procedural default. Relief under § 2255 is denied as to Dessoye's jurisdictional claim.

### Vagueness

Dessoye pleaded guilty to violating 18 U.S.C. § 2252A(a)(2)(A), [Record Document 78 at 5], which he now argues is vague and ambiguous, [Record Document 98 at 2–3]. Dessoye's failure to raise this claim on direct appeal means that it is procedurally defaulted unless there is cause and prejudice. *See Lopez*, 248 F.3d at 433 (citing *Cervantes*, 132 F.3d at 1109).

A statute is unconstitutionally vague when a defendant "could not have reasonably understood that his conduct was prohibited by the statute." *United States v. Wicker*, 933 F.2d 284, 288 (5th Cir. 1991) (citing *Parker v. Levy*, 417 U.S. 733, 756 (1974)). In his motion, Dessoye faults Congress for not defining the following terms: "sex offense," "any material," "means or facility" and "interstate and foreign commerce." [Record Document 98 at 3]. The text of the provision under which he was convicted reads:

> Any person who ... knowingly receives or distributes ... any child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer . . . shall be punished as provided in subsection(b).

18 U.S.C. § 2252A(a)(2)(A). The terms "sex offense" and "any material" are not part of the statute of conviction and so provide no basis on which Dessoye can validly complain. While "means or facility" and "interstate or foreign commerce" are to some extent terms of art, the statute expressly criminalizes the use of a computer to distribute child pornography. *Id.* "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy*, 417 U.S. 733, 756 (1974). By pleading guilty, Dessoye admitted the conduct described in the stipulated factual basis: uploading child pornography to Dropbox and emailing the link to D.S. in Minnesota. [Record Document 77-2 at 3–4]. Because Dessoye knew that he was using a computer to upload child pornography, he cannot argue that he could not have reasonably understood that this conduct violated § 2252A(a)(2)(A).

In his reply brief, Dessoye argues for the first time that 18 U.S.C. § 2252A is vague because terms used in that statute are defined globally in 18 U.S.C. § 2256 for all of Chapter 110 of Title 18 of the United States Code. [Record Document 105 at 2]. Dessoye points to no authority requiring that Congress repeat lengthy definitions in each individual statute rather than collecting those definitions in a single provision. In the absence of such authority, this Court rejects Dessoye's contention that locating the definitions of operative terms within § 2256 renders § 2252A unconstitutionally vague. *Cf. United States v. Clayton*, 506 F.3d 405, 410 (5th Cir. 2007) (citing *United States v. Iverson*, 162 F.3d 1015, 1021 (9th Cir. 1998)) ("[A] statute providing the basis for criminal prosecution may incorporate other provisions by reference.").

As neither formulation of his vagueness argument has any merit, Dessoye was not prejudiced by his appellate counsel's failure to raise it. Therefore, Dessoye cannot overcome his procedural default. His § 2255 motion on the grounds that U.S.C. § 2252A(a)(2)(A) is vague is denied.[1]

### Counsel of Choice

Dessoye next argues that he was "deprived of counsel of choice." [Record Document 98 at 3]. Although he urged this claim strongly before the trial court, he did not raise it on appeal and so is procedurally barred from doing so now without a showing of cause and prejudice. *See Lopez*, 248 F.3d at 433 (citing *Cervantes*, 132 F.3d at 1109).

Dessoye's attorney during all stages of his criminal prosecution was Wayne Blanchard ("Blanchard"), a federal public defender. [Record Documents 17 and 18]. Although the Sixth Amendment guarantees the right to counsel during criminal prosecution, an unfettered right to choose an attorney does not extend to defendants with appointed counsel. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144, 151 (2006). An indigent defendant for whom counsel has been appointed may not receive the services of replacement counsel unless "there is a substantial conflict or problem affecting the ability to represent the defendant—'that is, a showing of conflict of interest, a complete breakdown in communication, or an irreconcilable

---

[1] Dessoye also argues that "it is not stated formally whether the alleged violation was 18 U.S.C. § 2252A(a)(2)(A) or 18 U.S.C. § 2252A(a)(2)(B). [Record Document 98 at 3]. This argument relies on a false predicate; the indictment clearly alleges that he distributed child pornography "in violation of Title 18, United States Code, Section 2252A(a)(2)(A)." [Record Document 49 at 4 (emphasis added)]. This argument is thus meritless.

conflict.'" *United States v. Mitchell*, 709 F.3d 436, 441–42 (5th Cir. 2013) (quoting *United States v. Romero-Trejo*, 476 F. App'x 790, 791 (5th Cir. 2012) (per curiam)).

Before Dessoye agreed to plead guilty (on Blanchard's advice), an in-camera hearing was held before the Magistrate Judge to discuss Dessoye's request for substitute counsel. [Record Document 68 at 1]. Dessoye's main complaints were Blanchard's allegedly insufficient communications to him while he was held in jail and Blanchard's refusal to file various motions. [Record Document 96 at 4–6]. Blanchard determined (correctly, as discussed below) that Dessoye's proposed motions were meritless. [*Id.* at 6]. The Magistrate Judge denied Dessoye's request for new counsel, and Blanchard's representation continued throughout the proceedings. [Record Documents 68 at 1 and 84 at 1].

Dessoye now insists, vaguely, that the "attorney/client relationship was in a state of decay." [Record Document 98 at 3]. However, the source of this "decay" appears to have been Blanchard's refusal to file meritless motions. An attorney's refusal to file such motions is not an "irreconcilable" conflict if the basis of that conflict is the defendant's refusal to accept the motions' lack of merit. *See United States v. Hart*, 557 F.2d 162, 163 (8th Cir. 1977) (holding that "counsel's refusal to advance the defendant's obtuse legal theories" does not create an irreconcilable conflict). Moreover, at his change of plea hearing Dessoye testified:

> THE COURT: Have you had sufficient opportunity to discuss your case with Mr. Blanchard?
> THE DEFENDANT: Yes, sir.
> THE COURT: Are you satisfied with Mr. Blanchard's representation of you?
> THE DEFENDANT: Yes, sir.

[Record Document 78 at 7]. As there was no irretrievable breakdown in the attorney-client relationship, Dessoye was not entitled to substitute counsel. This claim has no merit, and so

appellate counsel was not ineffective for failing to assert it on direct review. This Court is now procedurally barred from considering it.[2]

### Ineffective Assistance of Counsel

Next, Dessoye claims that he received ineffective assistance of trial counsel due to Blanchard's (1) failure to challenge the statute for vagueness; (2) failure to challenge this Court's jurisdiction; (3) failure to challenge the offense-level calculation in the PSR; (4) advice to plead guilty in order to limit his sentencing exposure; and (5) advice that the only valid issue for appeal was the reasonableness of his sentence. [Record Documents 98 at 3–4 and 105 at 3–4].[3]

To successfully establish an ineffective-assistance-of-counsel claim, a movant must demonstrate that his attorney's performance was deficient and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. The movant bears the burden of proof. *See id.* If he fails to establish either prong of the *Strickland* test, then counsel's performance was constitutionally effective. *Id.*; *see also Tucker v. Johnson*, 115 F.3d 276, 280 (5th Cir. 1997) (citing *Strickland*, 466 U.S. at 697).

As to the deficient-performance prong, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). The movant "must

---

[2] Dessoye's related claim that "he was deprived . . . of adequate representation" is essentially an ineffective-assistance-of-counsel claim and is addressed below. [Record Document 98 at 3]

[3] Dessoye also argues that his attorney was ineffective for failing to challenge the search warrant or file a motion to suppress the evidence discovered on Dessoye's computer. [Record Document 98 at 3]. This argument will be discussed below in relation to validity of the search.

11

overcome the presumption that, under the circumstances, the challenged action might [have] be[en] considered sound trial strategy." *Id.* (internal quotation marks omitted) (citing *Michel*, 350 U.S. at 101). If a tactical decision was "conscious and informed," it "cannot be the basis for constitutionally ineffective assistance of counsel unless it [wa]s so ill chosen that it permeate[d] the entire trial with obvious unfairness." *Crane v. Johnson*, 178 F.3d 309, 314 (5th Cir. 1999) (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)). "Judicial scrutiny of counsel's performance must be highly deferential," and the court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

To establish prejudice, a § 2255 movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A movant was not prejudiced if the "ineffectiveness of counsel d[id] not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Self-serving conclusory statements that the outcome would have been different "fall[ ] far short of satisfying *Strickland*'s prejudice element." *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001). Rather, the movant must affirmatively prove the existence of prejudice. *See United States v. Kayode*, 777 F.3d 719, 724–25 (5th Cir. 2014). In the context of a guilty plea, demonstrating prejudice requires the movant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

*Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Because both prongs of *Strickland* must be satisfied, a court may reject an ineffective-assistance-of-counsel claim upon an insufficient showing of either deficient performance or prejudice, without inquiry into the other prong. *Strickland*, 466 U.S. at 697.

As discussed above, challenges to this Court's jurisdiction or to § 2255A on the basis of vagueness would have been meritless, and so Dessoye's trial counsel was not ineffective for failing to raise them.

Dessoye argues that Blanchard did not challenge the "PSI, nor the miscalculated points prepared by the USPO." [Record Document 98 at 3]. Specifically, he argues: "with respect to the PSI, it was calculated at 36 points ln: 15-17. The points were totaled as 42. This overstated the conduct of the Petitioner." [*Id.*]. It is unclear where Dessoye has drawn these numbers from. The PSR calculated his adjusted offense level at 41, which was reduced to 38 because of his acceptance of responsibility. [Record Document 90 at 7–8]. His reference to "ln 15-17" may be intended to point out that only 119 images of child pornography were found on the computers belonging to D.S.'s parents, but that he received an enhancement for an offense involving 600 or more images based on the images found on his thumb drives. [*Id.* at 5, 7]. To the extent that this is Dessoye's argument, it is foreclosed by the concept of relevant conduct, which includes "all acts and omissions committed . . . by the defendant . . . that occurred during the commission of the offense of conviction [or] in preparation for that offense." U.S.S.G. § 1B1.3(a)(1). As the images that Dessoye gathered were the source of the images that he shared with D.S. via Dropbox, which were themselves the source of the images on

D.S.'s parents' computer, Blanchard was not ineffective for failing to object to the five-point enhancement for possession of 600 or more images.

Dessoye next contends that Blanchard provided ineffective assistance by advising him that "if Petitioner went to trial, he would get the 20 year maximum for sure." [Record Document 98 at 4]. Although Dessoye was initially charged with using a facility of interstate commerce to entice a minor to engage in criminal sexual activity, which carries a sentencing range of ten years to life, this charge was dismissed prior to Dessoye's guilty plea. [Record Documents 49, 70, and 71]. Thus, at the time of his guilty plea, Dessoye faced one count of possession of child pornography, with a sentencing range of up to ten years, along with two counts of receiving child pornography and one count of distributing child pornography, each carrying a sentence of five to twenty years. 18 U.S.C. § 2552A(b)(1)–(2). Thus, Dessoye appears to be arguing that he interpreted Blanchard's statement to mean that if he pleaded guilty, he would receive a sentence shorter than the twenty-year maximum.

Before the deduction of three points for acceptance of responsibility, Dessoye's adjusted offense level was 41. [Record Document 90 at 7]. This adjusted offense level gives a recommended sentence of 324 to 405 months, far exceeding the statutory maximum of 240 months. U.S.S.G. ch. 5, pt. A. Thus, had Dessoye been convicted after trial, his sentence almost certainly would have equaled the statutory maximum. With the guilty plea, the guideline range was reduced to 235 to 293 months, [Record Document 90 at 12], leaving at least a possibility of a sentence below the statutory maximum. The plea also provided an opportunity for Dessoye to allocute from a position of contrition. The Court concludes that Blanchard's

estimate of the likely sentence should Dessoye be convicted fell within the range of reasonable professional assistance and so cannot constitute ineffective assistance of counsel.

Alternately, Dessoye may be taking issue with Blanchard's estimation that a jury would likely vote to convict. Given Blanchard's reasonable assessment that the Government had amassed a significant amount of evidence, [Record Document 96 at 10], this Court cannot conclude that Blanchard's evaluation constituted unreasonable professional assistance, *see United States v. Carr*, 80 F.3d 413, 418 (10th Cir. 1996) ("Given the weight of the government's evidence against Appellant, it was perfectly appropriate for O'Donnell to inform his client about the great likelihood of conviction.").

Moreover, during his plea colloquy, Dessoye confirmed his understanding that the undersigned was not bound to sentence him within the range provided by the Sentencing Guidelines, that the maximum possible term of imprisonment was twenty years, and that he would not be able to withdraw his plea even if the sentence were more severe than he expected. [Record Document 78 at 16–19]. Thus, regardless of Dessoye's interpretation of Blanchard's statements, Dessoye was formally notified of the possibility that he could receive a twenty-year sentence.

Turning finally to Blanchard's alleged advice that the only valid basis for an appeal was the reasonableness of Dessoye's sentence, it is unclear when in the representation Blanchard made this contention. The alleged contention may have occurred while Dessoye was contemplating whether to plead guilty. Dessoye has not explained how this advice caused him to plead guilty and how, if Blanchard had not given it, Dessoye would have elected to proceed to trial. In the absence of that explanation, this Court cannot find that Dessoye was prejudiced

by Blanchard's observation that his case presented no appealable issues other than the reasonableness of the sentence. Alternately, if Blanchard made this observation after Dessoye had pleaded guilty, then it is more properly analyzed as inadequate appellate representation. As discussed elsewhere in this ruling, any issues that might have been raised on appeal other than the reasonableness of Dessoye's sentence are not meritorious. Thus, Dessoye suffered no prejudice from their not being raised and, as a result, did not experience ineffective assistance of counsel.

In summary, this Court rejects Dessoye's arguments that his trial counsel was ineffective for failing to challenge this Court's jurisdiction, the vagueness of the statute, or the calculations in the PSR, for advising a guilty plea in order to limit sentencing exposure, or for advising that the reasonableness of the sentence was the only valid grounds for appeal.

### Sufficiency of the Evidence

Dessoye argues that it "was also never proved that the illicit material in question was actually sent by the Defendant." [Record Document 105 at 4]. This appears to be a sufficiency-of-the-evidence-argument. As it was not raised on direct appeal, it is procedurally barred unless Dessoye shows cause and prejudice.

"A voluntary guilty plea . . . precludes consideration of a claim challenging the sufficiency of the evidence." *United States v. Vanchaik-Molinar*, 195 F. App'x 262, 263 (5th Cir. 2006) (per curiam) (citing *United States v. Hanyard*, 762 F.2d 1226, 1229–30 (5th Cir. 1985)). Because Dessoye's guilty plea bars consideration of his sufficiency-of-the-evidence claim, it would have been futile for appellate counsel to raise it. Thus, this claim is procedurally barred.

## Validity of the Search Warrant

Dessoye next argues that the search of his residence was illegal and that Blanchard was ineffective for failing to object to the legality of the search. [Record Document 98 at 3–4]. The police tracked D.S.'s cell phone signal to Dessoye's residence. [Record Document 90 at 4]. When two officers entered the home, they found D.S., who told them that he had been communicating with Dessoye by text message for nine months, as well as evidence of marijuana. [Record Document 105 at 5]. Both of these facts appeared in the affidavit supporting the subsequent search warrant for Dessoye's home. [*Id.*]. That search uncovered over 900 images of child pornography. [Record Document 90 at 5]. Dessoye argues that without the evidence of the marijuana or D.S.'s statements to the police, which were obtained as result of a warrantless entry, the search warrant would not have been granted, and so evidence obtained through the subsequent search should be suppressed. [Record Document 105 at 5–6].[4] He then argues that this would have eliminated the basis for the five-point enhancement for an offense involving 600 or more images because only the 119 images recovered from D.S.'s family's computer would have been used to calculate Dessoye's sentence. [Record Document 98 at 3].

"[W]hen a defendant enters a voluntary and unconditional guilty plea, the plea has the effect of waiving all nonjurisdictional defects in the prior proceedings." *United States v.*

---

[4] Dessoye also argues that the warrant to search his computers and email "was based solely on communication between himself and D.S." [Record Document 98 at 4]. This contradicts the claim in his reply memorandum that the warrant was also based on evidence of marijuana use. [Record Document 105 at 4]. In any event, as explained below, alternate sources of information available to the Minnesota police would have supported a valid warrant to search Dessoye's home, including his computer equipment. Hence, this argument lacks merit.

*Daughenbaugh*, 549 F.3d 1010, 1012 (5th Cir. 2008) (citing *United States v. Stevens*, 487 F.3d 232, 238 (5th Cir. 2007)). Hence, Dessoye may not directly challenge the validity of the search warrant or the images discovered as a result. *See United States v. Ishmael*, 343 F.3d 741, 742 (5th Cir. 2003) (citing *Stone v. Powell*, 428 U.S. 465 (1976)) (holding that a movant with a full and fair opportunity to litigate an illegal search claim at trial and on direct appeal may not challenge the search on collateral review). Instead, "[h]e may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*," *id.* (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). *McMann*, in turn, holds that a guilty plea is intelligent when rendered on advice that, even though faulty, was "within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771 (1970).

During the in-camera hearing before the Magistrate Judge, Blanchard explained his opinion that a motion to suppress the images on Dessoye's thumb drives would not have been granted because the images were subject to inevitable discovery. [Record Document 96 at 14–17]. Inevitable discovery is an exception to the exclusionary rule and applies when "there is a reasonable probability that the evidence would have been discovered from an untainted source" and the Government "was actively pursuing a substantial alternate line of investigation at the time of the constitutional violation." *United States v. Hernandez*, 670 F.3d 616, 623 (5th Cir. 2014) (first quoting *United States v. Singh*, 261 F.3d 530, 535 (5th Cir. 2001); then quoting *United States v. Zavala*, 541 F.3d 562, 579 (5th Cir. 2008)).

Even assuming that the search warrant obtained following the warrantless entry into Dessoye's home was invalid, the child pornography on Dessoye's thumb drives would

inevitably have been discovered. The Minnesota police already had possession of D.S.'s parents' computer, which was ultimately found to contain 119 images of child pornography. His parents disclaimed any knowledge of how the pornography came to be located on their computer. Meanwhile, D.S. had been located inside Dessoye's home via a cell phone ping. Based on these two facts, probable cause would exist to conclude that Dessoye was the source of the child pornography found on D.S.'s parent's computer and a warrant could have been obtained on that basis without evidence of the marijuana or D.S.'s statements when found inside Dessoye's home. Thus, it is probable that the images ultimately located on the thumb drives in Dessoye's home would have been inevitably discovered based on the discovery of the 119 images on the computer in Minnesota and D.S.'s location in Dessoye's home. The parallel investigation in Minnesota into the origin of the 119 images and the reasons for D.S. running away from home satisfy the requirement of a "substantial alternate line of investigation." *Hernandez*, 670 F.3d at 623 (quoting *Zavala*, 541 F.3d at 579)). Therefore, Blanchard's opinion that a motion to suppress would have been futile fell within the range of reasonable professional assistance and so did not render Dessoye's plea unintelligent. As his plea was not unintelligent, Dessoye has waived his right to pursue his Fourth Amendment arguments on collateral review. His motion is denied.

### Reasonableness of Sentence

Finally, Dessoye argues that a twenty-year sentence was unreasonable to impose upon a fifty-two-year-old man. When affirming his sentence, the Fifth Circuit rejected this claim. *Dessoye*, 648 F. App'x at 434. "It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255

Motions." *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) (citing *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980)). As the Fifth Circuit heard and rejected Dessoye's unreasonable-sentence claim on appeal, *Dessoye*, 648 F. App'x at 434, this Court cannot now consider it. His motion is denied as to this claim.

## CONCLUSION

For the foregoing reasons, based on the record and the relevant jurisprudence, **IT IS ORDERED** that Dessoye's motion under 28 U.S.C. § 2255 [Record Document 98] is **DENIED** and **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted. Because Dessoye's claim is plainly refuted by the record, no evidentiary hearing is required. *See United States v. Green*, 882 F.2d 999, 1008 (5th Cir. 1989).

Pursuant to Rule 11(a) of the Rules governing § 2255 proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the petitioner. Unless a Circuit Justice or a Circuit or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeal. In this case, a certificate of appealability is **DENIED** because Dessoye has failed to demonstrate a substantial showing of the denial of a constitutional right.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this ___ day of _____, 2019.

ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE